FRANK L. PAUP, APPELLEE, V. AMERICAN TELEPHONE & TELEGRAPH COMPANY, APPELLANT.

FILED MARCH 16, 1933. No. 28365.

*Brome, Thomas & McGuire* and *G. H. Seig,* for appellant.

*Fred N. Hellner* and *Richard Mackey, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action at law to recover damages, growing out of an accident, to an automobile owned by plaintiff. A trial to a jury resulted in a verdict and judgment against the defendant, American Telephone & Telegraph Company, and for plaintiff, in the sum of $600, and a verdict in favor of defendant Short. From the order overruling its motion for a new trial, the telephone company appeals.

It appears that plaintiff, an automobile dealer, was driving a new Nash automobile, just delivered to him by the distributors at Omaha, eastward from that city to his place of business at Denison, Iowa. En route he arrived at the Douglas street bridge between Omaha, Nebraska, and Council Bluffs, Iowa, about 8 o'clock a. m. on January 9, 1931. It was a foggy, misty morning. His automobile lights were burning, and he was traveling about fifteen miles an hour. Shortly before plaintiff arrived at the bridge, a Ford car, belonging to the defendant telephone company, with three employees therein, parked upon the north side of the bridge, headed west. Two of these employees then crossed to the south side of the bridge with certain tools and materials for the purpose of making repairs on the property of the telephone company, and while they were thus engaged a Dodge car, not involved in the accident, ran into the rear of the telephone car in such a manner as to become engaged thereto. Thereupon the foreman of the telephone company crew ordered Mr. Montgomery, a fellow employee, to go to the east tollhouse at the east entrance to the bridge and instruct the toll attendant to stop westbound traffic. What this employee did thereafter is a matter of disputed evidence. Testimony of plaintiff, if believed, establishes that, in carrying out this order, after delivering his message to the east tollhouse attendant, and on his return to the telephone company car, the employee, Montgomery, ran toward plaintiff's automobile, as it was being driven eastward over the bridge, and flagged it

to a complete stop. At this time the truck of defendant Short was traveling about 75 feet in the rear of plaintiff's car. The truck driver observed the plaintiff's car stopping, and that there was ample room to pass to the left of plaintiff's car. The intervening cars prevented the truck driver from seeing Montgomery or observing his stop signals. He turned to the left, slowed down, and started to go around the car of plaintiff. When he arrived on a line even with the back footboard of that car, a man, subsequently identified as Montgomery, dashed from in front of the Paup automobile to a position directly in front of this approaching truck, signaling for it to stop. The intervening distance between the approaching truck and the running man, when the latter was first discovered, was such that the truck could not be stopped in time to save Montgomery from serious injury. As the driver of the truck testified: "It was up to me either to hit the man or hit the car." In the emergency presented, to save the man, he turned his truck quickly to the right and collided with plaintiff's Nash car, and thereby the damages in suit were caused.

The defendant telephone company insists that the evidence is insufficient to sustain the verdict, and in argument at the bar emphasized the opposing testimony of its own witnesses. But it is plain that the trial jury accepted the version of the accident as given by plaintiff's witnesses. On this basis their determination is binding upon this tribunal. In the light of the verdict, we accept the view that the jury were justified in determining that defendant Short, driving his truck at a lawful rate of speed, undertook in a proper manner to pass plaintiff's car ahead. When he turned to the left and was coming up abreast of it, Montgomery dashed into view and negligently assumed a dangerous position, and to save this man it was necessary for the truck driver to turn his truck promptly to the right. In doing this he crashed into the plaintiff's car. He was suddenly called to act in an emergency. He was not negligent, and if it be

conceded that he acted unwisely, it was error *in extremis*. It follows that the negligence of the telephone company's servant furnishes the sole and proximate cause. *Wyatt v. Chesapeake & P. T. Co.*, 158 Va. 470, 82 A. L. R. 386; *Lammers v. Carstensen*, 109 Neb. 475.

In the early case of *Scott v. Shepherd*, 2 W. Bl. (Eng.) 893, it appears that a "lighted squib, so thrown by the defendant, fell upon the standing of one Yates, who sold gingerbread, etc. That one Willis instantly, and to prevent injury to himself and the said wares of the said Yates, took up the said lighted squib from off the said standing, and then threw it across the said market-house, when it fell upon another standing there of one Ryal, who sold the same sort of wares, who instantly, and to save his own goods from being injured, took up the said lighted squib from off the said standing, and then threw it to another part of the said market-house, and, in so throwing it, struck the plaintiff then in the said market-house in the face therewith, and the combustible matter then bursting, put out one of the plaintiff's eyes." Shepherd was held liable for the injury thus inflicted. The reason is: Here was but a single wrong, the original act of throwing the dangerous missile; and though the plaintiff would not have been harmed by it but for the subsequent acts of others in throwing it in his direction, yet, as these were instinctive and innocent, it is the same as if a cracker had been flung in his direction which had bounded and rebounded, again and again, before it struck the plaintiff's eye, and the injury was therefore a natural and proximate result of the original act.

Since this so-called squib case, the principle is well established that: "A tort-feasor is answerable for all the consequences that, in the natural course of events, flow from his unlawful acts, although those results are brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrong-doer, or were the natural consequences of his original act." 1 Cooley, Torts (4th ed.) 114.

The following cases illustrate the application of the language just quoted: *Pierce v. Conners*, 20 Colo. 178; *Phillips v. Dewald*, 79 Ga. 732; *Western & A. R. Co. v. Bailey*, 105 Ga. 100; *Alabama G. S. R. Co. v. Chapman*, 80 Ala. 615; *Marchand v. Gulf C. & S. F. R. Co.*, 20 Tex. Civ. App. 1; *Hammill v. Pennsylvania R. Co.*, 56 N. J. Law, 370; *Jackson v. Galveston, H. & S. A. R. Co.*, 90 Tex. 372; *Village of Carterville v. Cook*, 129 Ill. 152.

In *Hilligas v. Kuns*, 86 Neb. 68, this court expressly approved and substantially adopted the statement of the principle above quoted, which is controlling in the instant case. It follows that the evidence before us is ample to sustain a recovery.

As to the challenge to the sufficiency of the petition, the first paragraph or division thereof, after alleging the time and place of the accident, continues: "That while proceeding in a careful and prudent manner eastward the agent, servant and employee of the defendant, American Telephone & Telegraph Company, one Montgomery, suddenly without any warning, reason or cause jumped in front of the automobile of your plaintiff and ordered your plaintiff to stop, which was immediately done, instantaneously and concurrently, and as a result of said negligent acts the truck driven by Samuel L. Short and owned by the defendant William B. Short ran into the rear of your plaintiff's car, which at that moment was standing, which concurrent negligence of the defendants and each of them was the proximate cause of plaintiff's damage, as hereinafter set out." The language thus quoted embraces and covers the ultimate facts of the transaction, as already recited in this opinion. These constitute the facts from which the inference of actionable negligence in this case arises. The second paragraph or division of this petition which furnishes the sole basis of defendant's challenge to the sufficiency of this pleading may be considered as merely stating the conclusions of the pleader, and whatever force and effect be accorded them, they cannot function to circumscribe or limit the

legal effect of the ultimate facts pleaded in the first paragraph.

At best, petitions must be construed as entireties, giving full force and effect to all language therein contained. We are committed to the rule: "A petition, taken as a whole, which states facts showing the plaintiff is entitled to some relief, is not fatally defective merely because it may require some disentanglement, when it is impugned for the first time by a demurrer *ore tenus*." *Donovan v. Chitwood*, 116 Neb. 683.

The defendant telephone company complains of instruction No. 1 given by the trial court on its own motion. In this connection it is to be remembered that the real issue of fact upon which this case must be determined is to be found in the positive evidence of plaintiff's witnesses that Montgomery, the telephone company's employee, ran toward plaintiff's automobile as it was being driven eastward over the bridge and flagged it to a complete stop; then, as the following truck turned out to the left and started around the Paup car, Montgomery dashed in front of the oncoming truck and, from a position of danger, likewise signaled it to stop, thus, due to his own position of danger, causing it to swerve sharply to the right and collide with plaintiff's automobile. Opposed to this is the equally positive testimony of Montgomery, and other witnesses for the defendant telephone company, categorically denying the evidence of plaintiff's witnesses as to the telephone company's employees in any manner participating in the accident. The testimony on behalf of the telephone company, it is true, does not negative the occurrence of the accident by a collision between plaintiff's automobile and Short's truck, substantially as alleged, but is directed to establishing as a fact that Montgomery did not flag either the truck or the damaged automobile, was not present when the accident occurred, knew nothing about it, and in no manner participated therein or contributed thereto.

We have already quoted certain allegations of the "first

paragraph of plaintiff's petition." This defendant's answer expressly admits the allegations contained in the first four lines of paragraph 1 of plaintiff's petition, and also sections 1, 2, and 3 of paragraph 3 thereof. It denies generally all allegations not expressly admitted therein. But the original petition of plaintiff is not before us, and neither does the transcript show its paging and paragraphing with reference to the lines composing the same. In this situation, by the instruction of which defendant complains, the district court instructed the jury that "The defendant telegraph company for answer admits the allegations in the plaintiff's petition, but denies that its servants or any of them was guilty of any act of negligence causing or contributing to the bumping of plaintiff's car and the damage to the same." Obviously it does not affirmatively appear that defendant was prejudiced by the instruction given. Comp. St. 1929, sec. 20-853.

The evidence in the record as to extent of damage is ample to support the verdict.

The record here presented failing to affirmatively disclose that a substantial or prejudicial error was committed by the trial court, its judgment is

AFFIRMED.